

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court
## NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

**CRIMINAL COMPLAINT**

**Miguel Claudio Trevino**
**Roberto Isidoro Vera**
**Luis Antonio Iturralde**

CASE NUMBER: **1:13-MJ-1037**

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about <u>July 24, 2013</u> in <u>Dekalb</u> County, in the Northern District of Georgia, and elsewhere, the above named defendants did

**did, knowingly combine, conspire, confederate, agree, and have a tacit understanding with other persons known and unknown to:**

**possess with intent to distribute a controlled substance, said conspiracy involving, at least five (5) kilograms of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21 United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II) and 846, (as to Trevino and Vera only); and**

**conduct and attempt to conduct a financial transaction involving the proceeds of a specified unlawful activity, that is the sale and distribution of controlled substances, in an effort to conceal and promote said activity, in violation of Title 18, United States Code, Sections 1956(h).**

I further state that I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI), and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof.          (X ) Yes          ( ) No

Signature of Complainant
SA Matthew DeVane (HSI)

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

<u>July 25, 2013</u>
Date

at      <u>Atlanta, Georgia</u>
City and State

E. CLAYTON SCOFIELD, III
United States Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

AUSA Cassandra J. Schansman 404/581-6083

## AFFIDAVIT

I, Matthew DeVane, a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations (HSI), being first duly sworn, depose and state under oath as follows:

## A. **Introduction**

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of or to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. By this affidavit, I submit that probable cause exists to believe that

   a. **Miguel Claudio TREVINO** – a 38 year old Hispanic male, who is a United States citizen;

   b. **Roberto Isidoro VERA** – a 36 year old Hispanic male, who is a United States citizen; and

   c. **Antonio ITURRALDE** – a 42 year old Hispanic male, who is a United States citizen;

   conspired to commit violations of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii) and 846 (Conspiracy to Possess Cocaine w/Intent to

Distribute); and Title 18, United States Code, Section 1956(h) (Conspiracy to Launder Money).

## B. Training and Experience

3. I have been employed as a Special Agent with HSI since December 2008. I am currently assigned to the office of the Special Agent in Charge Atlanta, Georgia. My duties and responsibilities include the investigation of civil and criminal violations of the United States Code. Over the course of my career, I have participated in, and led, investigations relating to narcotics smuggling, money laundering, and other violations of federal law.

4. During my career in law enforcement, I have participated in numerous search and seizure warrants pertaining to the seizure of contraband and evidence, including warrants resulting in the seizure of illegal drugs, drug paraphernalia, drug records, and proceeds of drug trafficking. I have debriefed numerous defendants, informants, and witnesses, who possessed personal knowledge regarding drug trafficking organizations. I also have become familiar with and utilized traditional investigative techniques such as, without limitation, electronic and physical surveillance, general questioning of witnesses, use of search warrants, use of informants, and use of undercover agents.

5. Based on my knowledge, training, and experience in the investigation of drug traffickers, and based upon interviews I have conducted with defendants, informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business. My familiarity includes: the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones and calling cards to facilitate drug activity; and their use of numerical codes and code words to conduct drug transactions. I also am familiar with the ways that drug traffickers conceal, convert, transmit, and transport their drugs and drug proceeds, including, without limitation, the use of carriers to transport drugs and drug proceeds, the use of third parties to purchase or hold title to assets, and the use of off-shore accounts. In addition, I know that drug trafficking organizations, such as the one under investigation here, commonly will compartmentalize members of their organization into discrete "cells," with specific members, responsibilities, and/or geographical territories assigned to each cell. In that regard, I know that members of one cell commonly are provided with information only about their specific cell's criminal activities, thus limiting the information about the overall organization.

3

## C. Sources of Information

6.   The information contained in this Affidavit is based on my own personal knowledge of this case, as well as information relayed to me by other law enforcement authorities and sources of information. The facts related in this Affidavit do not reflect the totality of information known to me or other officers, merely the amount needed to establish the probable cause.

## D. Factual Basis

7.   HSI agents are conducting an investigation that focuses on a drug trafficking and money laundering organization (DTMLO) operating in the Atlanta, Georgia area. This investigation has revealed this DTMLO is suspected of distributing kilogram quantities of cocaine and transporting large quantities of United States currency from the sale of said cocaine.

8.   On July 24, 2013, at approximately 9:23 am, Task Force Agent (TFA) Chris Carlisle observed a gray Ford F-150, bearing Texas license plate BU22299 depart the Red Roof Inn, located at 1960 N Druid Hills Road, Atlanta, Georgia. The vehicle was driven by a Hispanic male, later identified as Roberto Isidoro VERA, with a Hispanic male passenger, later identified as Miguel Claudio TREVINO.

9.   Agents maintained surveillance on the gray Ford F-150 bearing Texas license plate BU22299, and at approximately 9:48 am, the vehicle stopped at

4

the Holiday Inn Express, located at 2920 Clairmont Road, Atlanta, Georgia. TFA Juan Echeverry observed TREVINO exit the vehicle and walk into the hotel lobby area carrying a black duffle bag with a yellow stripe and the word "Dewalt" written in yellow.

10.   At approximately 9:55 am, TFA Echeverry observed TREVINO exit the Holiday Inn Express lobby with a purple rolling suitcase, which TREVINO placed in the bed of the same gray Ford F-150. The vehicle then departed the Holiday Inn Express.

11.   At approximately 10:14 am, TFA Carlisle observed the gray Ford F-150 parked at an auto body shop located at 2300 Dresden Drive, Atlanta, Georgia.

12.   At approximately 11:42 am, TFA Echeverry observed TREVINO place three (3) bags, including the purple rolling suitcase, into the trunk of a red Nissan Maxima, bearing Georgia license plate PRI3225, which was also parked at the auto body shop. The vehicle then departed the auto body shop.

13.   At approximately 11:52 am, TFA Carlisle (Georgia State Patrol, GSP) conducted a traffic stop at I-85, near mile marker 96, on the red Nissan Maxima for following too closely and failure to signal a lane change, both violations of Georgia state traffic law. TFA Carlisle noticed several characteristics about TREVINO and VERA that looked suspicious, to

5

include their inconsistent stories, their nervous behavior, and their lack of knowledge about the vehicle and its ownership.

14. At approximately 12:15 pm, VERA signed GSP written consent to search the red Nissan Maxima and TREVINO provided verbal consent to search the vehicle.

15. A search of the vehicle revealed the purple rolling suitcase in the trunk, which contained 17 identical bricks, which I believe based upon my training and experience to be kilogram bricks of cocaine. One of the bricks field tested positive for cocaine.

16. In post-Miranda statements made by TREVINO, TREVINO advised that earlier that day, TREVINO delivered a bag of United States currency to a Hispanic male identified as "Luis," in Room 428 at a nearby hotel. TREVINO provided a piece of paper from his pocket, which had the following phone number written for "Luis," 210-324-3993.

17. At approximately 1:40 pm, Special Agent (SA) Ellen Johnson knocked on the door of Room 428 of the Holiday Inn Express, located at 2920 Clairmont Road, Atlanta, Georgia, and asked the sole occupant, later identified as Luis Antonio ITURRALDE, if she could enter the room, to which ITURRALDE responded affirmatively. SA Johnson identified herself as an agent with Immigration and Customs Enforcement to ITURRALDE. SA Johnson

6

asked ITURRALDE if there were any drugs, money, guns or bombs in the room. ITURRALDE stated that there were no drugs. SA Johnson asked again if there was any money in the room. ITURRALDE pointed to the area on the left side of the dresser. SA Johnson then requested verbal consent to search the room from ITURRALDE. ITURRALDE again responded affirmatively. SA Johnson retrieved a black duffle bag, with a yellow stripe and with the word "Dewalt" written in yellow, from the left side of the dresser, which contained bulk United States currency in rubber-banded bundles and a money counter.

18. At approximately 2:30 pm, SA Johnson called telephone number 201-324-3993, which TREVINO indicated was the telephone number for "Luis," who was also the person to whom TREVINO indicated he had delivered the drug proceeds. At the same time, SA Johnson observed a Samsung cellular phone ringing, which was one of four (4) cellular telephones located in ITURRALDE's room.

19. At approximately 2:58 pm, GSP Trooper First Class Michael Allen brought K-9 Tessa to Holiday Inn Express, Room 428, to conduct a free-air sniff around the room, whereupon K-9 Tessa gave a positive alert for the odor of narcotics around boxes in the closet area of the hotel room, and the black duffle bag.

### E. **Conclusion**

20.Based upon the aforementioned facts, I assert there is probable cause to
believe that on or about July 24, 2013, **Miguel Claudio TREVINO,
Roberto Isidoro VERA, and Luis Antonio ITURRALDE** in the Northern
District of Georgia, and elsewhere, did, knowingly combine, conspire,
confederate, agree, and have a tacit understanding with other persons known
and unknown to knowingly and intentionally possess with intent to distribute
a controlled substance, said conspiracy involving, at least five (5) kilograms
of a mixture and substance containing a detectable amount of cocaine, a
Schedule II controlled substance, in violation of Title 21 United States Code,
Section 841(a)(1) and (b)(1)(A)(ii)(II) (as to TREVINO and VERA only);
and did, knowingly combine, conspire, confederate, agree, and have a tacit
understanding with other persons known and unknown to transfer the
proceeds derived from the sale and distribution of controlled substances in
violation of Title 18, United States Code, Sections 1956(h).

FURTHER YOUR AFFIANT SAYETH NOT

8